IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MY SPACE PRESCHOOL AND :
NURSERY, INC. :
 :  CIVIL ACTION
  v. :
 :  NO. 14-2826
CAPITOL INDEMNITY :
CORPORATION, ET AL. :

**MEMORANDUM**

**SURRICK, J.**         **MARCH  13 , 2015**

  Presently before the Court is Defendant Capitol Indemnity Corporation's Motion to

Dismiss the Complaint (ECF No. 2.); and Defendant Morgan and Associates, Inc.'s Motion to

Dismiss Complaint (ECF No. 6).  For the following reasons, Defendants' Motions will be

granted in part, and denied in part.

**I.**  **BACKGROUND**

  **A.**  **Factual Background[1]**

  This case arose out of an insurance coverage dispute between Plaintiff My Space

Preschool and Nursery, Inc. and Defendants Capitol Indemnity Corporation ("Capitol") and

Morgan and Associates ("Morgan").  In June of 2012, Plaintiff's principal and owner, Melani

Conti, sought the assistance of Donald Morgan, the owner of the insurance brokerage firm

Morgan and Associates, to procure an insurance policy for a new daycare center.  (Compl. ¶ 3,

Notice of Removal Ex. A, ECF No. 1.)  Plaintiff selected Morgan as a broker because Morgan

held itself out as having specialized expertise in insurance for daycare centers.  (*Id*. ¶¶ 7, 18.)

---

[1] When considering a Rule 12(b) motion to dismiss, we must "accept as true all of the
allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view
them in the light most favorable to the non-moving party."  *Rocks v. City of Phila*., 868 F.2d 644,
645 (3d Cir. 1989).

Plaintiff never met Morgan in person; they communicated exclusively by telephone, fax, and e-mail.  (*Id*. ¶ 8.)

Plaintiff disclosed to Morgan that she had never owned or operated a daycare business and that she had no knowledge about the type of insurance that she would need.  Morgan responded that he was "an expert in obtaining insurance for daycare centers and that he had been handling insurance for daycare centers for many years."  (*Id*. ¶¶ 8a, 8b.)  At Morgan's request, Plaintiff provided him with (1) pictures of the building; (2) a copy of her lease; (3) a copy of her license to operate the daycare center; and (4) her handbook of policies and procedures.  (*Id*. ¶ 8c.)  Plaintiff advised Morgan that she would be making betterments and improvements to the property.  (*Id*. ¶¶ 8d, 8e.)  Morgan assured Plaintiff that he would be able to provide her with an insurance policy that would cover her needs and properly protect her daycare business.  (*Id*. ¶ 8c, 8g.)

On July 1, 2012, Morgan gave Plaintiff an insurance quote.  (*Id*. ¶ 9 & Ex. A.)  After receiving the quote, Plaintiff and Morgan stopped communicating for many months because Plaintiff was not ready to purchase an insurance policy.  (*Id*. ¶ 10.)  On November 5, 2012, Plaintiff provided Morgan with a completed Preschool/Daycare/Montessori Application-Questionnaire ("Application").  (*Id*. ¶ 11 & Ex. B.)  Morgan assisted with the completion of this application.  (*Id*. ¶ 11.)

On December 6, 2012, Morgan e-mailed Plaintiff a Certificate of Liability Insurance ("Certificate").  (*Id*. ¶ 12. & Ex. C.)  In the e-mail attaching the Certificate, Morgan advised Plaintiff that the Certificate served as evidence that the daycare center was insured.  (*Id*. ¶ 12.)  The Certificate indicates that Plaintiff's Business Personal Property ("BPP") was insured up to a

limit of $85,000.  (*Id.*; Ex. C.)  The Certificate also provides that My Space Preschool and

Nursery Inc. is the named insured and that Capitol Indemnity Corporation is the insurer.  (Ex. C.)

Plaintiff paid Morgan a premium of $2,683, and shortly thereafter received an insurance

policy from Capitol that provided coverage from December 4, 2012 through December 4, 2013.

(*Id.* Ex. D ("Policy").)  The Policy states that the limit for BPP is $1,000, as opposed to the

$85,000 that was stated in the Certificate.  (*Id.*)  On March 3, 2013, Plaintiff's property suffered

water damage as a result of a leaking water tank in the upstairs apartment.  (*Id.* ¶ 22 & Ex. I.)

Plaintiff incurred damages in the amount of $66,733.77, which included BPP damages in an

amount of $15,411.03.  (*Id.* & Ex. E.)  Plaintiff also seeks reimbursement of expenses, mitigation

costs, and loss of business income in the amount of $20,000 per month for over a year.  (Compl.)

Plaintiff reported the claim to both Morgan and Capitol.  (*Id.* ¶ 23.)  Capitol advised

Plaintiff that the loss was covered by the Policy, but that the BPP coverage was capped at

$1,000.  (*Id.*)  This was the first time that Plaintiff realized that the BPP coverage on the Policy

was $1,000, as opposed to $85,000, and that the Policy did not provide coverage for betterments

and improvements, as Plaintiff had requested.  (*Id.* ¶ 24.)  Plaintiff avers that Morgan never read

the Policy because, if he had, he would have noticed the nonconformities.  (*Id.* ¶¶ 26-28.)

After incurring costs to mitigate the property damage, Plaintiff obtained a public adjuster,

who prepared a damages estimate.  (*Id.* ¶ 29 & Ex. E.)  The adjuster hired a company to prepare

an inventory of Plaintiff's business property that was damaged by the water.  (*Id.* Ex. F.)

Between March 2013 and October 2013, the adjuster, Morgan and Plaintiff exchanged e-mails

about the Policy.  (*Id.* ¶ 29 & Ex. I.)  In the e-mails, Plaintiff requested that Morgan cover the

cost of the damages.  (*Id.*)  Morgan stated that that it was Capitol that failed to include the terms

set forth in the Application and Certificate.  (*Id.*)

3

**B.     Procedural History**

On April 29, 2014, Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County.  (Compl.)  On May 16, 2014, Capitol removed the matter to this Court.  (Notice of Removal.)  The Complaint asserts the following claims:  (1) breach of contract;  (2) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1, *et seq.*; (3) negligence; (4) negligent misrepresentation;  (5) breach of fiduciary duty; (6) breach of contract against Capitol; and (7) bad faith against Capitol, in violation of 42 Pa. Cons. Stat. Ann. § 8371.  (Compl.)  The parties stipulated to dismiss the bad faith claim against Capitol.  (ECF No. 19.)

On May 22, 2014, Capitol filed a Motion to Dismiss. (Capitol Mot., ECF No. 2.)  Plaintiff filed a response.  (Pl.'s Capitol Resp., ECF No. 4.)  On June 12, 2014, Morgan filed a Motion to Dismiss.  (Morgan Mot., ECF No. 6.)  Plaintiff filed a response.  (Pl.'s Morgan Resp., ECF No. 11.)  After the Motions were filed, the parties engaged in settlement discussions, and in November 2014, they participated in a settlement conference, which was ultimately unsuccessful.  The Motions are now ripe for disposition.

## II.     LEGAL STANDARD

Under Federal Rule 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis.  *Fowler*, 578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true.  *Id*. at 210-11.  Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679).  Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Capitol seeks dismissal of the Complaint in its entirety.  Morgan requests dismissal of the following claims:  negligent misrepresentation; violation of the UTPCPL; and breach of

fiduciary duty.  Morgan also moves to strike Plaintiff's requests for punitive damages, counsel fees, and incidental damages.

**A.      Breach of Contract Claim (Count I)**

Capitol seeks to dismiss the breach of contract claim alleged in Count I of the Complaint. The Complaint alleges that Capitol "breached [its] undertaking to procure and provide proper insurance coverage for Plaintiff in accordance with its request and needs, causing Plaintiff loss and damage." (Compl. ¶ 32.)  Under Pennsylvania law, the elements of a breach of contract claim are:  (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages.  *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004).

Capitol argues that the Policy is the only contract that governs its relationship with Plaintiff, and that it has not breached the Policy.  Capitol contends that because it dealt exclusively with Morgan and not Plaintiff prior to issuance of the policy, it could not have breached an agreement with Plaintiff to "procure and provide insurance coverage."  Plaintiff responds that although Plaintiff dealt directly with Morgan in securing insurance coverage, Morgan acted as Capitol's agent, and in accordance with agency principles, Capitol is vicariously liable for the acts of Morgan, its agent.

In Pennsylvania, insurance brokers are generally considered to be the agent of the insured and not of the insurer:

> Where a person desiring to have his property insured applies not to any particular company or its known agent, but to an insurance broker, permitting him to choose which company shall become the insurer, a long line of decisions has declared the broker to be the agent of the insured; not of the insurer.

*Taylor v. Crowe*, 282 A.2d 682, 683 (Pa. 1971); *see also Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1168 (Pa. Super. Ct. 2009) (noting that Pennsylvania courts still adhere to the rule espoused in *Taylor*, and citing cases).

Courts often draw a distinction between an insurance agent, who is employed by the insurer and represents the insurer's interests, and an insurance broker, who is not employed by a specific insurance company, but rather acts as a middleman between the insured and the insurer. *Rich Maid Kitchens, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 641 F. Supp. 297, 303 (E.D. Pa. 1986). The broker in these circumstances serves as an agent of the insured unless evidence is presented supporting the existence of an agency relationship between the broker and the insurer. *Id.*; *All Am. Rathskeller*, 976 A.2d at 1168. The Pennsylvania Supreme Court instructs that "there must be some evidence of an authorization, or some fact from which a fair inference of an authorization by the company might be deduced to make an insurance broker the agent of the company." *Taylor*, 282 A.2d at 683-84.

Here, Plaintiff makes few allegations about the relationship between Morgan and Capitol. Plaintiff merely alleges that "[a]t all times material hereto, Defendant MORGAN was acting in the course and scope of its employment as dual agents and in a representative capacity of CAPITOL and Plaintiff." (Compl. ¶ 5.) Plaintiff also alleges that it reached out to Morgan as the broker to find the appropriate insurance coverage; Plaintiff did not reach out to the insurer, Capitol. Plaintiff does not dispute that it never communicated with Capitol until after the policy was purchased. Accepting all of the Complaint's factual allegations as true, and drawing all inferences in Plaintiff's favor, we are not persuaded that Morgan served as an agent of Capitol. Morgan was acting merely as the middleman between Plaintiff and Capitol. Plaintiff has failed to allege any facts that would trigger an exception to the general rule that an insurance broker

acts as an agent of the insured, not the insurer.  Plaintiff's allegation that Morgan served as a dual agent of both Capitol and Plaintiff is nothing more than a legal conclusion.  This is not sufficient to state a plausible breach of contract claim against Capitol based on agency principles.  Count I will be dismissed against Capitol.

### B.  Unfair Trade Practices and Consumer Protection Law Violation (Count II)

Morgan and Capitol both seek to dismiss Plaintiff's claim in Count II for violation of the UTPCPL.  Defendants argue that Plaintiff does not have standing to bring a private cause of action under the statute.  We agree.

The UTPCPL is a remedial statute intended to protect consumers from unfair or deceptive practices.  *Balderston v. Medtronic Sofamor Danek, Inc*., 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001) (citing *Commonwealth by Creamer v. Monumental Props., Inc*., 329 A.2d 812, 816 (Pa. 1974)).  The statute limits the class of plaintiffs who may pursue private actions.  *Id*.; 73 Pa. Stat. Ann. § 201-9.2(a).  The class of private-action plaintiffs is defined in section 201-9.2 of the UTPCPL as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater.

73 Pa. Stat. Ann. § 201-9.2(a).

Whether a purchase is made primarily for a personal, family or a household reason depends on the purpose of the purchase, not the type of product purchased.  *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc*., 574 A.2d 641, 648 (Pa. Super. Ct. 1990); *see also Coleman v. Commonwealth Land Title Ins. Co*., 684 F. Supp. 2d 595, 618 (E.D. Pa. 2010); *Balderston v. Medtronic Sofamor Danek, Inc*., 285 F.3d 238, 242 (3d Cir. 2002) ("In construing

claims under the [UTP]CPL, Pennsylvania courts have distinguished between purchases made for business reasons, which are not actionable, from those made for 'personal, family or household use.'" (citing *Weinberg v. Sun Co*., 777 A.2d 442, 446 (Pa. 2001))).  This is also true when the item purchased is an insurance policy.  Although a plaintiff may pursue a private cause of action against an insurer based on unfair or deceptive insurance acts or practices, "the insurance being sued upon must have been purchased for personal, family or household purposes."  *Britamco Underwriters v. C.J.H., Inc*., 845 F. Supp. 1090, 1096 (E.D. Pa. 1994), *aff'd,* 37 F.3d 1485 (3d Cir. 1994).

When an insurance policy is purchased to provide coverage to a business, courts in Pennsylvania have consistently found that plaintiffs lack standing to assert a claim under the UTPCPL.  *Id.* (dismissing claim under the UTPCPL where the insurance policy provided coverage to a tavern business); *Trackers Raceway, Inc. v. Comstock Agency*, 583 A.2d 1193, 1196 (Pa. Super. Ct. 1990) (dismissing UTPCPL claim where insurance policy purchased for go-cart track operator was not for personal, family, or household purpose); *Perschau v. USF Ins. Co*., No. 97-7801, 1999 U.S. Dist. LEXIS 3334, at *13-14 (E.D. Pa. Mar. 22, 1999) (plaintiff lacked standing under the UTPCPL where insurance policy purchased for business); *Mechetti v. Illinois Ins. Exchange*, No. 97-5855, 1998 U.S. Dist. LEXIS 4035, at *6 (E.D. Pa. March 30, 1998) (same); *Smalanskas v. Indian Harbor Ins. Co*., No. 04-2394, 2008 Pa. Dist. & Cnty. Dec. LEXIS 233 (C.P. Lackawanna Feb. 15, 2008), *aff'd,* 970 A.2d 490 (Pa. Super. Ct. 2009) (same); *Novinger Grp., Inc. v. Hartford Ins., Inc*., 514 F. Supp. 2d 662, 670 (M.D. Pa. 2007) (same).

Here, Plaintiff purchased the Policy for a daycare business.  The name of the "Insured" listed on the Policy is "My Space Preschool and Nursery, Inc.," and the address of the covered property under the policy is the address of the daycare business.  There is nothing in the Policy

that supports a finding that the coverage was intended for personal, family, or household purposes. Plaintiff does not dispute that the Policy was intended for her daycare business. Instead, Plaintiff points to the broad definition of "person" under the UTPCPL, which includes "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."  73 Pa. Stat. Ann. § 201-2.  Although Plaintiff is correct that, as a business, it meets the definition of "person" under the statute, Plaintiff nevertheless lacks standing as the insurance policy at issue was not purchased for personal, family, or household purposes.[2]  Count II will be dismissed against Morgan and Capitol.

## C.   Negligence (Count III)

In Count III, Plaintiff asserts that Defendants were negligent for failing to obtain insurance coverage that conformed to Plaintiff's requests and demands.  (Compl. ¶ 39; Pl.'s Capitol Resp. 7.)  Under Pennsylvania law, to prevail on a negligence claim proof of the following four elements is required:  "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. Ct. 2005).

In support of its request to dismiss, Capitol argues that because Plaintiff dealt exclusively with Morgan, there are no facts to support a finding that Capitol owed a duty to Plaintiff, let

---

[2] Plaintiff's reliance on *Star Spa Services, Inc. v. Turano Insurance Agency, Inc.*, No. 07-302, 2007 U.S. Dist. LEXIS 71781 (M.D. Pa. Sept. 25, 2007), is misplaced.  Absent from the district court's opinion is any discussion of standing under the UTPCPL.  Nor is there any indication that the parties raised the issue of standing in their briefing.  The district court declined to dismiss the plaintiff's UTPCPL on grounds unrelated to the issues presented here. However, it appears as though the insurance policy at issue in *Star Spa* was a policy for the plaintiff's business.  Cases finding that insurance policies purchased for businesses do not qualify under the UTPCPL are legion.  We are not persuaded by Plaintiff's argument, or its reliance on a single case that did not address standing.

alone breached a duty to procure adequate insurance coverage.[3]  Plaintiff responds that Capitol's duty arose out of it knowing about Plaintiff's insurance requests, providing a policy that was inconsistent with those requests, and failing to notify Plaintiff that the policy differed from the requests.[4]

Plaintiff relies on *Tonkovic v. State Farm Mutual Automobile Insurance Company*, 521 A.2d 920 (Pa. 1987).  In *Tonkovic*, the Pennsylvania Supreme Court held that, where "an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy."  521 A.2d at 925.  *Tonkovic* represents a departure from earlier Pennsylvania cases that deferred to the language of the insurance contract itself to determine an insurer's obligations to pay insurance claims.  *See, e.g.*, *West v. Lincoln Benefit Life Co.*, 509 F.3d 160, 168 (3d Cir. 2007).  Under *Tonkovic*, "[t]he reasonable expectation of the insured is the focal point."  521 A.2d at 926; *see also id*. ("Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled.").  In reconciling its holding with the general rule of adhering to the plain language of insurance agreements, the court in *Tonkovic* stated that:

> We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for.  When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made.  The

---

[3]  Morgan does not seek to dismiss Count III.

[4]  Plaintiff argues in the alternative that Capitol is vicariously liable for the negligent actions of Morgan, its alleged agent.  Similar to our holding on Count I, Plaintiff has failed to allege sufficient facts showing that Morgan was an agent of Capitol.  To the extent that Plaintiff's negligence claim against Capitol is based on vicarious liability, it is dismissed.

burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

521 A.2d at 925.

Similar to the plaintiff in *Tonkovic*, Plaintiff in this case applied for an insurance policy with the understanding that it would include $85,000 of BPP coverage.  This amount was not only requested specifically in Plaintiff's insurance Application, but it was also stated in the Certificate, which purported to contain the terms of the coverage and served as proof that Plaintiff was insured.  (Compl. Exs. B & C.)   Capitol was aware of Plaintiff's insurance requests—indeed, Morgan provided Capitol with Plaintiff's insurance application and questionnaire (*see* Compl. Ex. I)—and yet provided a policy that was contrary to those requests. Neither Capitol nor Morgan informed Plaintiff that, despite its application and specific requests, the Policy only provided BPP coverage for $1000, not $85,000.  Under these circumstances, Capitol owed a duty to advise Plaintiff that the BPP coverage was an amount different than what Plaintiff requested.  *Tonkovic*, 521 A.2d at 925; *see also Toy v. Metro. Life Ins. Co*., 863 A.2d 1, 13 (Pa. Super. Ct. 2004) (affirming that an insurer has a duty to inform an insured that it issued a policy different from what the insured requested).  Viewing all of Plaintiff's allegations as true, we are satisfied that Plaintiff has sufficiently alleged a reasonable expectation of coverage that was different than the coverage provided in the policy, and that Capitol breached a duty it owed to Plaintiff.  Capitol's request to dismiss Count III will be denied.

     **D.**     **Negligent Misrepresentation (Count IV)**

In Count IV, Plaintiff alleges that Defendants negligently misrepresented that the insurance policy they procured would adequately protect Plaintiff's property in the event of a loss.  Morgan and Capitol each seek to dismiss Count IV, although on different grounds.  To establish a claim for negligent misrepresentation under Pennsylvania law, Plaintiff must prove

the following elements:  "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005).

                  *1.     Morgan*

        Morgan argues that the negligent representation claim is barred by the gist of the action doctrine.  The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims . . . [by] preclude[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims."  *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The tort claim survives if the wrong ascribed to the defendant is the "gist of the action, the contract being collateral."  *Id*. at 14; *see also Pa. Mfrs. Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa. Super. Ct. 2003) (citation omitted) ("When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort.").  Determination of whether the gist of the action doctrine applies "call[s] for a fact-intensive judgment as to the true nature of a claim."  *Williams v. Hilton Group PLC*, 93 F. App'x 384,386 (3d Cir. 2004).

        Courts are reluctant to dismiss tort claims at the early stages of proceedings under the gist of the action doctrine.  *See, e.g.*, *Padalino v. Std. Fire Ins. Co.*, 616 F. Supp. 2d 538, 550 (E.D. Pa. 2008) (declining to decide on motion to dismiss whether gist of action precludes tort claim); *Victor Buyck Steel Construction v. Keystone Cement Co.*, No. 09-2941, 2010 U.S. Dist. LEXIS 30897, at *8 (E.D. Pa. Mar. 30, 2010) (same); *Lebish v. Whitehall Manor*, 57 Pa. D. & C.4th

247, 250 (C.P. Lehigh 2002) ("We cannot discern at this [pleading] stage of the proceedings if the contract claim is completely redundant to the tort claim.").  This is particularly true when the claim sought to be dismissed is a fraud in the inducement claim or a negligent misrepresentation claim.  *Knit With v. Knitting Fever, Inc.*, No. 08-4775, 2009 U.S. Dist. LEXIS 98217, at *23 (E.D. Pa. Oct. 20, 2009) (citing cases); *Victor Buyck Steel*, 2010 U.S. Dist. LEXIS 30897, at *8; *Weber Display & Packaging v. Providence Wash. Ins. Co.*, No. 02-7792, 2003 U.S. Dist. LEXIS 2187, at *12 (E.D. Pa. Feb. 10, 2003).

Here, there are few facts alleged describing the contractual relationship between Plaintiff and Morgan.  Without more information, we are unable to discern whether the source of the duty that was breached arose from the parties' agreement to obtain insurance or from social policy.  *See Redev. Auth. of Cambria Cnty. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996).  At this early stage of the proceeding, before the parties have engaged in meaningful discovery, it would be inappropriate to dismiss Plaintiff's negligent representation claim.  To be clear, this does not mean that Plaintiff's breach of contract claim and negligent misrepresentation claim are both viable.  Rather, Plaintiff may proceed under alternative theories of liability and use the discovery process to aid in classifying the gist of its claims.  *See, e.g.*, *Padalino*, 616 F. Supp. 2d at 550.  Morgan's Motion to dismiss Count IV will be denied.

   2. *Capitol*

Capitol argues that the facts alleged do not support a claim against it, highlighting that it never communicated with Plaintiff until after issuance of the policy.  Plaintiff does not dispute that it never communicated with Capitol prior to receiving the policy.  Instead, Plaintiff argues that Capitol is vicariously liable for damages caused by Morgan's negligent misrepresentation under theories of agency and respondeat superior.  We have concluded that the Complaint fails to

support an inference that Morgan served as Capitol's agent.  *See supra* at Section III.A.

Because Plaintiff's claim for negligent misrepresentation against Capitol depends on vicarious

liability, it must be dismissed.

### E.     Breach of Fiduciary Duty (Count V)

In Count V of the Complaint, Plaintiff alleges that Morgan and Capitol owed fiduciary

duties to Plaintiff to properly advise it of its insurance needs.  Plaintiff also alleges that

Defendants breached that duty by failing to secure adequate insurance and advise Plaintiff that

the Policy did not provide the coverage it had requested.  (Compl. ¶¶ 51-54.)  Morgan and

Capitol both move to dismiss this claim.

#### 1.     Morgan

Morgan argues that Plaintiff has failed to allege the existence of a fiduciary relationship

between them.  A fiduciary relationship arises under Pennsylvania law when one places a special

confidence in another.  The Pennsylvania Supreme Court has identified two ways to establish

this special confidence:  (1) demonstrating that the law recognizes the relationship as

confidential, such as the relationship between attorney and client; or (2) proving with facts that

the relationship is confidential.  *Basile v. H&R Block, Inc*., 52 A.3d 1202, 1210 (Pa. 2012).

Plaintiff has not pointed to any authority finding the broker-insured relationship to be a

confidential one.  Nor were we able to find any cases holding that such a relationship is *per se*

confidential.  In fact, at least one Pennsylvania case determined that broker-insured relationships

are not *per se* confidential.  *See Wisniski v. Brown & Brown Ins. Co*., 906 A.2d 571, 578 (Pa.

Super. Ct. 2006) (observing that relationships between brokers and insureds are diverse and fact-

intensive, and declining to conclude that the relationship is confidential as a matter of law).

Therefore, we must decide whether Plaintiff has alleged sufficient facts to show that it shared a confidential relationship with Morgan.

A few principles gleaned from Pennsylvania caselaw guide this analysis.  First, the concept of a confidential relationship is not capable of a precise definition.  *Basile*, 52 A.3d at 1204; *In re Estate of Scott*, 316 A.2d 883, 885 (Pa. 1974) (noting that a confidential relationship "cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line").  Notwithstanding its flexible nature, a confidential relationship has been described as one where the parties deal on unequal terms:  one of the parties has the power and means to take advantage of the other, *see In re Estate of Evasew*, 584 A.2d 910, 914 (Pa. 1990), or occupies the position of advisor or counselor in such a way to "reasonably [] inspire confidence that he will act in good faith for the other's interest." *See id.* (citing *Brooks v. Conston*, 51 A.2d 684 (Pa. 1947)); *see also Wisniski*, 906 A.2d at 577 ("A confidential relationship is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice and seeks no other counsel, so as to give rise to a potential abuse of power.").

Second, determining whether a confidential relationship exists between two parties is "intensely fact-specific."  *Wisniski*, 906 A.2d at 578; *Stauffer v. Stauffer*, 351 A.2d 236, 241-42 (Pa. 1976) ("Whether or not a confidential relationship exists in a given case is usually a question of fact to be determined by no inflexible rule but by a weighing of the particular factors present in that case.").  Related to this, the existence of a confidential relationship requires a "substantial quantum of proof."  *Basile*, 52 A.3d at 1211 n.9; *see also id.* (noting that "the evidence to sustain a confidential relation must be certain").

Finally, a confidential relationship does not generally arise between two parties to an arm's-length business contract. *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 952-953 (E.D. Pa. 1998).  The reason for this is because "[m]ost commercial contracts for professional services involve one party relying on the other party's superior skill or expertise in providing that particular service."  *eToll, Inc.*, 811 A.2d at 23.  If a fiduciary duty arose in this context, then "virtually every breach of such a contract would support a tort claim."  *Id*. (quoting *Valley Forge*, 28 F. Supp. 2d at 952).  Thus, in determining whether a fiduciary duty arose in the context of an ordinary business transaction, courts must ask "whether the relationship goes beyond mere reliance on superior skill, and into a relationship characterized by overmastering influence on one side or weakness, dependence, or trust, justifiably reposed on the other side."  *Id*. (internal quotation marks omitted); *see also Valley Forge*, 28 F. Supp. 2d at 953 (noting that there is a "crucial distinction between surrendering control of one's affairs to a fiduciary or confidant or party in a position to exercise undue influence and entering an arm's length commercial agreement").

Here, the facts alleged reveal that the parties dealt on unequal terms.  The Complaint alleges that Morgan held himself out as an expert in obtaining insurance for daycare centers, and that he had been in this field for many years.  Plaintiff confessed that she had never owned or operated a daycare center and that "she had no idea of the type and amounts of insurance" that she would need.  (Compl. ¶ 8.)  Plaintiff relied on the knowledge and expertise of Morgan as a counselor or trusted advisor to obtain an insurance policy, and relied on Morgan's assurance that whatever insurance procured would adequately protect Plaintiff's property and provide sufficient coverage in the event of a loss.  Viewing all of these allegations as true, it is plausible that Plaintiff's relationship with Morgan moved beyond mere reliance on superior skill into a realm

where Morgan had an overmastering influence on Plaintiff's insurance decisions.  We are satisfied that Plaintiff's claim for breach of fiduciary duty should survive dismissal at this juncture.  If after discovery Morgan believes that the evidence does not support the existence of a confidential relationship, it may move for summary judgment.

    *2.  Capitol*

   Similar to the arguments raised in support of other claims, Plaintiff contends that agency principles save from dismissal its claim for breach of fiduciary duty.  Again, we disagree.  Plaintiff has failed to allege any facts demonstrating that Morgan served as an agent for Capitol.  Indeed, the facts support a finding that Morgan served as a middleman, and under these circumstances, is more appropriately considered an agent of Plaintiff, the insured.  Because Plaintiff's claim against Capitol relies entirely on a finding that Morgan was Capitol's agent, it must be dismissed.

**F.  Breach of Contract against Capitol (Count VI)**

   In Count VI, Plaintiff asserts a claim for breach of contract against Capitol.  Unlike the allegations in Count I, which center on Defendants' duty to procure adequate insurance, in this Count Plaintiff alleges that Capitol breached its duty to pay benefits for the actual loss of Plaintiff's business income under the Policy.  (Compl. ¶ 57.)  In support of dismissing Count VI, Capitol makes the same arguments that it made with respect to the breach of contract claim alleged in Count I, even though the allegations in support of these two Counts are different from one another.  As a result of Capitol's misinterpretation of this claim, it has failed to address Plaintiff's arguments or dispute Plaintiff's allegation that Capitol breached the Policy by failing to pay benefits owed to Plaintiff.   We are compelled to deny Capitol's request to dismiss Count VI at this juncture.

### H.      Morgan's Motion to Strike

Morgan also seeks to strike allegations from Plaintiff's Complaint related to its request

for:  (1) punitive damages; (2) attorney's fees; and (3) incidental damages.

#### 1.      *Punitive Damages*

Morgan seeks to strike Plaintiff's request for punitive damages, including allegations that

Morgan acted with recklessness.  As Plaintiff points out, the only Count on which Plaintiff seeks

punitive damages is Count VI, which asserts bad faith against Capitol, not Morgan.  Since the

time that the Motions were filed, the parties have agreed to voluntarily dismiss Count VII.

Morgan's request to strike on this basis is therefore denied as moot.

#### 2.      *Attorney's Fees*

Morgan also seeks to strike Plaintiff's request for attorney's fees.  Plaintiff responds that

the UTPCPL explicitly provides for reasonable attorney's fees.  Plaintiff cites no other statutory

authority permitting the recovery of attorney's fees.  Since we have concluded that Plaintiff fails

to state a claim under the UTPCPL, the request for attorney's fees will be stricken.

#### 3.      *Incidental Damages*

Finally, Morgan asks that Plaintiff's request for incidental damages be stricken from the

*ad damnum* clause of Count I, arguing that it amounts to a claim for special damages, and thus

must be pled specifically under Rule 9(g) of the Federal Rules of Civil Procedure.

For breach of contract claims, a plaintiff may recover incidental damages that "would

naturally and ordinarily result from the breach."  *Dehart v. HomEq Servicing Corp.*, No. 11-416,

2014 U.S. Dist. LEXIS 132414, at *19 (E.D. Pa. Sept. 12, 2014) (citing  *Liss & Marion, P.C. v.*

*Recordex Acquisition Corp.*, 983 A.2d 652, 662 (Pa. 2009)).  The Pennsylvania Supreme Court

has defined the damages element of breach of contract claims as follows:

> Where one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the contract provided otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty.

*Ferrer v. Trs. of the Univ. of Pa.*, 825 A.2d 591, 610 (Pa. 2002).  Although incidental damages must be *proven* with reasonable certainty, there is no authority supporting Morgan's argument that these damages must be alleged at the pleading stage with the same level of reasonable certainty.  Indeed, Rule 9(g) states only that, at the pleading stage, "[i]f an item of special damage is claimed, it must be specifically stated."  Fed. R. Civ. P. 9(g).  Rule 9(g) is silent with respect to incidental and consequential damages.  Morgan's attempt to conflate these two types of damages is misguided.  Morgan's request to strike reference to incidental damages in Count I will be denied.

**IV.      CONCLUSION**

For the foregoing reasons, Capitol's Motion to dismiss Counts I (breach of contract), II (violations of the UTPCPL), IV (negligent misrepresentation), and V (breach of fiduciary duty) will be granted, and these Counts will be dismissed.  Capitol's Motion to dismiss Counts III (negligence) and VI (breach of contract) will be denied.  Morgan's Motion to dismiss Count II (violations of the UTPCPL) will be granted, and its Motion to dismiss Counts IV (negligence) and V (breach of fiduciary duty) will be denied.  Finally, Morgan's request to strike punitive damages will be denied as moot, its request to strike attorney's fees will be granted, and its request to strike incidental damages will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**
